UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 09-10095-PBS |
| JOSEPH A. PINGARO, JR., and CHRISTINA SCOLA | ) ) ) | |

AMENDED MEMORANDUM AND ORDER

May 9, 2011

Christine Scola ("Scola") and Joseph Pingaro ("Pingaro") have been indicted on 67 counts, including a <u>Klein</u> tax conspiracy, tax evasion, subscribing false tax returns, structuring conspiracy, and 57 counts of illegal structuring of cash transactions. Scola moved to sever her trial, alleging that Pingaro will testify on her behalf as long she is tried separate from and subsequent to his trial. Pingaro submitted an affidavit regarding the exculpatory testimony he would provide on Scola's behalf, and the government submitted a proffer about its evidence of Scola's role in the alleged crimes. The Magistrate Judge recommended that the Court deny Scola's motion. (Document 120.)

After a review of the objections, the Court **ADOPTS** the report and recommendation ("R & R") and **DENIES** the motion to sever.

1

**DISCUSSION**

In December 2010, Scola filed a motion to sever supported by an affidavit from Pingaro regarding the testimony he would provide on Scola's behalf if he were tried in a separate and preceding trial. (Pingaro Aff. ¶ 2.) The evidence he would allegedly provide includes: 1) how Scola and Pingaro's business – J&J Metals – "kept track of the cost of goods sold" and relayed these figures to the accountants who prepared the tax returns at issue in this case; 2) Scola's limited role in the operation of J&J Metals and the tracking of goods sold; 3) "the fact that [Scola] did not physically work at" J&J; 4) her "lack of any first-hand or significant knowledge of the cost of goods sold by J&J Metals;" 5) instructions Scola received about how to structure banking transactions based upon the advice of accountants; and 6) that Scola received all information about day-to-day operations from Pingaro. (Id. ¶3.)

The Magistrate Judge evaluated the motion under the First Circuit's rule in United States v. Drougas, 748 F.2d 8 (1st Cir. 1984), in which the court applied a four factor test to determine if a defendant could sever her trial on the basis of the testimony of a co-defendant. "In order to be entitled to a severance on the basis of a codefendant's testimony the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and

effect; and (4) that the codefendant will in fact testify if the cases are severed." Id. at 19 (citations omitted). The Report and Recommendation found that Scola could not meet the fourth element because she could not establish that Pingaro's offer to testify, conditioned upon him being tried in a separate and preceding trial, meant that he would "in fact testify if the cases [were] severed." R & R at 3. In arriving at this conclusion, the Magistrate Judge relied on case law holding that "an offer to testify, conditioned on one defendant being tried before the other, fails to satisfy the elements of a prima facie case for severance." See United States v. Smith, 46 F.3d 1223, 1231 n. 3 (1st Cir. 1995) (noting that four other circuits had "...ruled that an offer to testify, conditioned on one defendant being tried before the other, fails to satisfy the elements of a prima facie case for severance." (citing United States v. Washington, 969 F.2d 1073, 1080 (D.C. Cir., 1992); United States v. Blanco, 844 F.2d 344, 352-53 (6th Cir. 1988); United States v. Haro-Espinsosa, 619 F.2d 789, 793 (9th Cir., 1979); United States v. Becker, 585 F.2d 703, 706 (4th Cir., 1978))).

Particularly given the high showing she must make in order to demonstrate a need to sever, Scola has not shown that the Report and Recommendation was in error. See United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999)("To overcome the district court's presumption in favor of joinder, [the defendant] must

3

demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice.").

For all of the reasons stated by the Magistrate Judge, the Court does not believe that Scola's motion withstands the fourth factor of the first part of the Drougas test, but even if it did, Scola has not shown that Drougas' secondary factors militate in favor of severance.  After a movant has demonstrated that she meets Drougas' primary factors, a court must "(1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to substantial, damaging impeachment; (3) assess the counter arguments of judicial economy; and (4) give weight to the timeliness of the motion." Drougas, 748 F.2d at 21.

Scola has not shown that Pingaro's testimony, as understood on the basis of his sparse affidavit, would be substantially beneficial to Scola's defense.  The crux of the charges in this case is the defendants' alleged illegal structuring of cash transactions in order to siphon funds from J&J Metals for the defendants' personal use without drawing the attention of federal tax authorities, and the reporting of fraudulent information on tax returns which overstated the cost of goods sold by J&J and underreported J&J's taxable income.  The extent of Scola's involvement in J&J Metals is relevant to her prosecution, but there are other witnesses who likely have personal knowledge of

4

this information.

For example, the government has proffered that, at trial, it will compel Scola's brother to testify. Scola's brother worked at J&J Metals as a partner of Pingaro's for a number of years until 2001. (See Doc. 101 at p. 7.) He has personal knowledge of Scola's responsibilities at J&J until that point. (Id. at p. 8.) Furthermore, in regard to the illegal cash transactions, Pingaro's affidavit references that in engaging in the alleged cash transactions Scola and Pingaro were acting upon the advice of J&J accountants. Although the affidavit is not entirely clear on this point, it seems that Scola could call J&J's accountant to address the cash transactions and his or her understanding of Scola's role in executing them.

As for Scola's role in the overstating of J&J's costs, Pingaro's affidavit does not reveal how his testimony could help Scola's case beyond merely stating that Scola had no personal knowledge of the cost of goods sold by J&J Metals. However, these bare assertions are an insufficient basis for severance. See United States v. Smith, 46 F.3d 1223, 1232 (1st Cir. 1995)("[T]he co-defendant's proffer has to do more than assert ultimate facts").

Moreover, even if Pingaro were to testify, his testimony would face daunting credibility issues. Along with his incentives to testify on his wife's behalf, the jury would also

5

be made aware of Pingaro's considerable criminal history, including multiple convictions for perjury and obstruction.

The interests of judicial economy also counsel against severance. This case is immensely complicated and resource intensive. The trial is expected to last about three weeks and involve a large number of witnesses. Moreover, if convicted, Pingaro could insist on delaying Scola's trial for years while his case made it through appeals and sentencing during which period his testimony could still prejudice his case. Such a delay would not be in the public's interest.

Based on this record, after weighing all the factors, the court denies the motion to sever. Defendants have offered to provide an in camera proffer of more detailed information. It is unclear why such an affidavit has not been filed or whether it would be timely at this point. The court reserves the right to reconsider the ruling if appropriate.

ORDER

The Report and Recommendation (Document 120) is **ADOPTED** and Scola's Motion to Sever (Document 82) is **DENIED.**

/s/ Patti B. Saris
_____
Patti B. Saris
United States District Judge